Oral argument not to exceed 15 minutes per side, Mr. Ivey will be up. Thank you. May it please the court, my name is Timothy Ivey from the Federal Public Defender's Office for the Northern District of Ohio and I'm pleased to be here on behalf of my client and the appellant, Bernice Stephens Miller. I would like to reserve three minutes of my time for rebuttal. You may. Thank you. I'd like to begin with our last argument in our brief and that is that the trial court incorrectly calculated the amount of loss in applying the sentencing guidelines in this particular case and calculating the amount of restitution by essentially holding Ms. Stephens Miller in the loss amount in the guidelines and in the amount to pay back in restitution for the total amount of benefits that she received from Bureau Workers' Compensation, her previous employer, and also the Social Security Administration for the total duration of time that is alleged in the indictment. This court has recognized and the guidelines have recognized in calculating loss that the defendant, what's aimed at is finding the actual amount of loss caused as a result of the harm of the act of the defendant and this court has recognized that in particular cases here where there's allegations of dishonesty, false statements, misrepresentation, that the defendant is entitled to an offset of that amount for the amount of benefits that is demonstrated that the defendant would have been entitled to if you had the defendant have been honest. In this particular case, there was no effort or any evidence presented on the part of the government to show what the value of the services that Ms. Stephens Miller had provided. About services, was there any period within the restitution period where she was not disabled? And I know you argue that there are some parts of that time, I take it, that she wasn't disabled, although there was evidence, for example, that at one point she said the store had been operating for nine previous years, which would seem to cover all of the gap that you claim. So can you tell us exactly what time she would have been entitled to benefits for and what your basis is, given the jury's verdict on the charges? First, I think it's important to understand the nature of her disability. There's no doubt that she was found to have a physical disability as well as a mental component to that disability. And Dr. Parikh, who testified for the defense, indicated that Ms. Stephens Miller's psychological problems make her variable. She is not consistent on a consistent basis of being able to not have psychosis overtake her and function normally, particularly for employment in the public sector. What the government did in this particular case, they did various spot checks. They did not demonstrate that Ms. Stephens Miller was at this store, functioning in this capacity, undisabled throughout this particular period of time. The spot checks that took place in this case were in June of 2006 once, two months later in August of 2006, then seven months later they spot checked in March, a few other places at times in 2007, and they only looked at the outside to whether she went in or not, didn't go in. Then they did time lists. It sounds like you're making the jury argument in general. Can you specify, what I ask, what the period that you claim she was actually disabled for and what evidence did you present to the judge on that point? She was actually disabled through the entire period. Well, but that's what the jury found against you, isn't it? The same thing that the jury found in the Waldron case that this court has decided, which is a case exactly the same way where the defendant in that particular case suffered a physical injury, claimed to be permanently totally disabled, but then it turns out during that time period that the individual was going to his family's hunting supply store and providing various services with no remuneration, just as Ms. Stephens Miller was alleged to do. And this court held, remanded back to the trial court for determination as to whether of the offset as to what the defendant would have been entitled to had he been honest. It's not an all or nothing proposition. She could have been still found partially disabled. The government in the trial did not, and in sentencing, did not present any evidence contrary to what Dr. Parikh testified to as to the transient nature of her condition and when she can work and when she can't. They merely just said, well, if, one, the... Did he specify any particular periods? From what you're saying, he said generically she might be up and down, but I didn't hear you say that there was some particular period where you had a medical expert saying she was disabled. The medical expert testified through the entire period of the indictment. He was treating her through this entire period and found her to have periods of psychosis and periods of non-psychosis and recommended that she go to this establishment for social... Did you have any evidence either at trial or at the sentencing where you said this is a period of time when she was not operating the business in the face of the, for example, the statement that she had been operating it for the previous nine years or the statements from the landlords that she had negotiated these leases at different times in the past? You're correct that the agents were only there, I think, starting in 06, but there was definitely evidence about what went on in the business earlier on, wasn't there? Yes, however, the first is that this was a very small boutique. It wasn't open every day, as I indicated before, but the DeVotis Imports on East Cuyahoga Falls Avenue, there was no lease introduced by the government as to when this time, how long, allegedly, Ms. Miller was in this store working. They called as a witness, Mr. Fruscella, who could not recall many details about this store, but he indicated in testimony that he only rented it to her for three to four years. The store was in operation, the evidence, from 1995 to 1998. There is no spot check, there is no landlord, there is no photo, there is no any type of evidence to show between 1998 and 2005 when the subsequent boutique was opened, first on Main Street and Britton Road, that the store was in operation at all. The government merely relied on this statement by Ms. Stevens Miller that I've been in business all this time, this is an individual who admittedly has psychosis and is in this place as a point of socialization. So there's no spot checks, there's no undercover work, there's no landlord, there's no lease, there's no prior customers, there's no evidence of income, there's nothing whatsoever showing between 1998 and 2005 that Ms. Stevens Miller was working or providing services to this boutique or even a location of where it was located during that particular time period. So from 1998 to 2005 we have nothing, yet and still the amount of benefits that she received through that point in time is added into the restitution amount and considered in the loss amount for restitution purpose. So we believe that in consistent with Waldron, we believe this case is on all fours with Waldron. The burden is not on the defendant to disprove or prove the amount of restitution in this case, it's on the government. And this court remanded back saying to have the trial court determine what amount would the defendant have been entitled to had the defendant been honest and then offset that amount in determining this amount. And that would then not only reduce potentially Ms. Stevens Miller's restitution payments, but it would also potentially reduce her guideline level and give the court something else to consider in passing a particular sentence. On the argument in our first one of the good faith instruction that we had requested be given for all three charges in this particular case, we acknowledge that the pattern jury instructions only mandate it to be given, in this case for the mail fraud. And the government relies on a couple arguments, essentially two. That one, the case law indicates that if in fact the instructing on the actual crime, if the mens rea or the mental state is adequately or sufficiently explained to the jury in the jury instruction, then there's no need for the good faith instruction to go in. And that's kind of implicit. The second one is that the government cites the different portions in the record in the closing arguments. When I made arguments to the jury, essentially sort of in negating the mens rea element of the crime, talking about good faith. I think that's a problem for two reasons. The first one is that in this particular case, most of the cases cited, in fact I believe all the cases cited by the government on this particular point, deal with charges where there's a single charge. And that single charge, an instruction may have been requested for good faith and wasn't given. In this particular case, however, the court granted the good faith instruction on the mail fraud and specifically instructed the jury it was for that charge only. So therefore, it negates the jury's consideration of it in arguing against the mens rea, the establishment of the mens rea and the other ones and it makes them reject any type of effort to discuss the good faith. Ms. Stevens Miller's reliance on the advice of her counsel. I see I'm out of time. Just one question on the restitution amount. I take it that you're contending the government didn't establish the amounts for the entire time or for the relevant portions of the time that there should have been, for which there should have been restitution, which would have been the period from 1996 to 2005 and thereafter. But did you or her attorney at the time of sentencing submit any information as to what time period that the restitution should have covered? My understanding is instead of presenting any specific information, you just said that the government didn't show the, didn't provide the relevant evidence to show the amount of restitution. But you didn't present any evidence indicating that she should have been subjected to restitution for a particular time frame but not other time frame. You just left the entire burden to the government. Is that what you did? Essentially because I believe it's the government's burden but I also relied, I thought I relied upon the evidence that we had used to trial about her. I think I focused on her mental state going in and out and she wasn't able to function properly or normally on every day. And so I think I relied upon the fact that the spy checks were so random and spaced out you couldn't show even if you, for purposes of determining actual loss that she was totally unable, she was totally unworthy of any benefits whatsoever through that time. Alright, thank you. Thank you.  Good morning your honors. May it please the court. My name is Laura Ford. I'm here on behalf of the United States. I'd like to begin by briefly addressing the 28J letter that was filed yesterday with respect to the district court's use of the pattern instruction on willfulness. It's the government's position that that issue is procedurally barred because Stevens Miller is raising it for the first time in a 28J letter. She didn't object below in the trial court. She didn't raise it in her initial brief and she didn't file a reply brief and I think the case law in this circuit is pretty clear that a party abandons an argument when it's not raised in an initial brief. And in support of that I have two cases. The first is United States v. Johnson. Citation is 440 Fed 3rd 832 specifically pages 845 and 46 which is a 2006 6th circuit opinion. And United States v. Graham citation 484 Fed 3rd 413 specifically page 418 and that's a 2007 decision by this court. And in that case the court refused to consider an argument that was raised for the first time at oral argument and that's essentially what Stevens Miller is attempting to do here by raising a new argument in a 28J letter the day before oral argument. It's our position that the issue has been abandoned because a 28J letter is designed to supplement an argument that's been already made and that argument hasn't been made in this case in the initial brief. And it doesn't matter if he's citing a case that was handed down after the briefs on appeal were submitted. If he hasn't previously argued that particular argument the fact that he's providing a new case is insufficient to have that considered. I take it would be your position. That is my position because it's not a new issue. I mean the cert petition was pending. It had been filed a month before Stevens Miller filed her brief. I mean she could have made the same argument. She chose not to but even if this court chooses to consider the issue she can't prevail on a plain error test. And the reason why is because the pattern instruction did not affect her substantial rights in this case. There was evidence in the record that she knew her conduct was unlawful with respect to the false statement charge. Government Exhibit 43 page 8 which I'm happy to supplement the record if the court would like to see that trial exhibit. That is a signed report of continuing disability interview in which she signed and dated it. It was in August of 2000 so it was about 7 years before the interview at issue. And in that document she acknowledged that it is a federal crime to make a false statement for use in determining social security eligibility. And during the interview at question Clark identified herself clearly as a special agent of the Social Security Administration. Stevens Miller certainly knew what the topic of the interview was going to be. She brought a workers compensation attorney with her and they reviewed her disability claim and she discussed her 1976 injuries. And I point the court to page ID 1480 and 1675. So it's the government's position that the use of the pattern instruction on willfulness does not affect her substantial rights. And also I'd note that the Supreme Court has not made a decision on the merits of this. They simply accepted the Solicitor General's confession of error and sent it back to the 9th Circuit for determination. I think that's significant because the District Court still doesn't have the benefit of a Supreme Court decision on this. And so I think certainly the District Court's use of boilerplate 6th Circuit pattern instructions 1302 in this court, which has probably been used thousands of times for years, does not rise to the level of calling into question the fundamental fairness or integrity of the Supreme Court. of the judicial proceedings below, even when an incorrect instruction is used. So it's the government's position that even if this court considers the argument in the 28J letter, that Stevens Miller cannot satisfy the third and fourth prongs of the plain error test. Essentially the only issue with respect to jury instructions that is properly before this court is whether the court should have expanded the good faith instruction to the non-fraud counts. And on that point I'd just like to call the court's attention to pages 38 and 39 of the government's brief, wherein the government cited page 2272 of the record for the proposition that the defense had tied all three counts to the good faith instruction. In looking at that particular page it appears that defense counsel was actually still discussing mail fraud, but as noted on page 39 of the government's brief, by page 2273 defense counsel had tied the good faith instruction to all three counts. And it's the government's position that certainly the district court had sufficient authority to refuse to expand the instruction to all three counts, because the plain language of the Sixth Circuit Pattern Instructions Committee commentary in 6.01 specifically says that the good faith instruction, across references, instruction 10.04, and says that the pattern instruction only applies to mail fraud, wire fraud, and bank fraud. It's not a general good faith defense. So the pattern instructions do not support Stevens Miller's position, and regardless, expanding the instruction would not have helped her in this case. The court emphasized that the defendant could argue that she lacked intent, and the jury heard the good faith theory during the evidence, and Stevens Miller provides a good summary of what she believes the good faith defense was on page 32 of her brief. And while she began, the closing arguments began with focusing on that good faith instruction in regards to the mail fraud, by the end of the closing arguments defense counsel was arguing, does this sound like intent to defraud, or is she simply acting consistent with her doctor's advice? And a few lines down on 2273 says, and I think you'll find that this is not someone who commits mail fraud and theft of government property in line. So the jury heard the defendant's position that good faith related to all three counts, but certainly the jury heard the instruction as to mail fraud and the jury rejected it, and I think with good reason. Even if you accept her doctor's testimony at face value, he told her to visit the store, not work at it, and the evidence showed that she was working at it, and I think the jury saw that she was feeding her doctor half-truths, and I think the best example of that is when she returns from a buying trip in Las Vegas in the summer of 2005, and the very next day she's complaining about being depressed and having low energy and being angry about not being able to function. It simply wasn't supported by the evidence. It's not good faith, it's the opposite of good faith, and I think there was plenty of evidence to show that she was in fact working. I think the most damaging aspect of the case for her was her own admissions in this case. You have in August 2006 police report where she identifies herself as self-employed, and for her occupation she identifies herself as an owner, and that's page ID 1639. You have two admissions in September of 2006. She says she's been in business for nine years before moving to the Main Street location, and that lease started in February of 2005, so that would put her working in 1996. She also admitted... Counsel, with respect to that, the statement at page 54 of your brief is saying that it had been located at East Cuyahoga Falls for nine years before moving to North Main Street, and your adversary says that there was only a lease there for three or four years. What's the evidence on that from your point of view? Well, it seemed like the landlord was kind of fuzzy on the issues, or fuzzy on the dates. We have her admission. One of the agents recalled her being at the prior location. I think it was the fraud analyst, Bryant, had testified that Stevens-Miller had provided wedding attire for a wedding that she participated in back in 1996, page ID 1613-15 and 1620, and there was a question about... So that 1996 would have been after the end of the lease? I thought that was still during the lease period. Oh, that's during the lease. I'm sorry. Maybe I misunderstood you. I thought they're trying at this point to carve out the period between what they see as the affirmative end of the lease and as though things then disappeared. Other than the statement that she had, at least as you stated, not in quotations at page 54, that she had been at the East Cuyahoga Falls location for nine years before moving to North Main Street. I said, is that the only thing that covers much of that period? You also have Charlene Dawkins who said that Stevens-Miller let her into the store, the old location. That would have been around 2004, page ID 1519-22, where Charlene Dawkins was with her daughter and Stevens-Miller let her into the store to take measurements for a bridal crown. Dawkins is the woman who's kind of her partner in the later years? Correct. So that's before the partnership. But I think her own admission is strong evidence in this case, and I would say this case is not at all like Waldron and Boring. In those cases, you had a benefits period that was only three to four years. It's unclear whether the indictment covered that whole period, but certainly the loss calculation covered the entire benefits period, and we don't have that in this case. We have nearly 30 years of benefits. And if the court had counted the entire benefits period, it would have gone back to 1976. But that's not what happened. In fact, the court specifically recognizes that the government really zeroed in on a period rather than focusing on the entire benefits period. The period that you claim, what was the starting point that you might say triggers the starting of the loss and restitution period? I'd say 1996, because her admission covers that period. You have the bridal magazine ad that's advertising for her services. So I think that's definitely the start of it. And it really goes to 2008. And that's the period that the judge used in calculating it, 1996 to 2008? Correct. I mean, the loss calculation just needs to be a reasonable estimate. It doesn't have to be exact under this court's decision in Triana. And I think the court did make a reasonable estimate, given her admission, given that you have this bridal magazine ad, you have Charlene's doctor's testimony about being let into the store. And when she makes this admission about being in business for nine years before moving to the North Main Street location, that's in 2006. And we have undercover operations in 2007, and she's receiving benefits until 2008. And the lease started when, in 95? I thought that's what I heard him say, that the lease was 95 to 98, but I might be wrong about that. That's what I thought I heard. Okay. I don't recall when the lease started. All right. Go ahead. But I think there's certainly evidence that she was in business beginning in 1996. And I think her doctor's testimony about her being disabled had significant credibility problems, given that he'd only seen her in a clinical setting. He'd admittedly never visited the store, and really had no basis to judge whether or not she was working. And I think if Stevens-Miller had disclosed what her self-employment activities had been, she would have been ineligible for benefits during that 12-year period. And for those reasons, the government would ask that this Court affirm the District Court's decision regarding the loss amount. And unless there's further questions, the government would respectfully request that this Court affirm her convictions and sentence. Thank you, Counsel. Mr. Ivey, you have three minutes for rebuttal. Thank you, Your Honor. I want to go to this period between 1998 and 2005. The government keeps making the statement that Ms. Stevens-Miller is in business and she has this store. And the first one, along with Ms. Miller's daughter, April, and Francis Perkins, who testified, was the one that was working at that primarily. When they talk about this article in 1996, this article in 1996 associated with this wedding did not say Stevens-Miller was the owner and operator of this store. It said Ms. Stevens-Miller designed a crown for a wedding in that particular situation. When the government sought to call all landlords of Ms. Stevens-Miller for this entire period, Mr. Fuscella indicated he only in testimony rented to Ms. Stevens-Miller or the store associated with her for two to three years. Then we start calling landlords for 2005 to 2008. The lease in 2005 was with landlord Alexander, who had no lease, but he indicated that when he sued for back rent, he sued Don Miller only. And his rent record only listed Donald Miller. Then when we go to Britton Road, Ms. Dawkins and Mr. Miller are the ones that filed as the owners of the business. All the checks, all the business records and everything that were introduced in this trial were done or written by Ms. Dawkins or Mr. Miller, none by Ms. Stevens-Miller, which is consistent with what her doctor indicated, Dr. Parikh. Dr. Parikh's testimony is also supported by Dr. Orlando, the independent doctor from the Bureau of Workers' Compensation or Industrial Commission, who long before Ms. Stevens-Miller even met Dr. Parikh, who indicated that Ms. Stevens-Miller had psychosis, magical beliefs, as well as the physical injury in this particular case. So I think that there has not been this presumption that goes out here that she's just working full time. They only did sporadic checkings of this business. Only twice did they actually go inside to see what Ms. Stevens-Miller was actually doing in these businesses. She was there as the doctor advised her to do. And so for purposes, the doctor testified that her condition persisted throughout this period. So I believe she's entitled, irrespective of the jury's verdict, to an offset, at least in between the years of 1998 and 2005. Thank you. Thank you, counsel. The case will be submitted.